UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 1:22-cv-11474-LTS

| | |
|---|---|
| JENNA FREEMAN, | ) |
| as Guardian of BRIAN CORBETT, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVIE BROWNING, in his individual | ) |
| capacity, JEFFREY BERMANI, in his | ) |
| individual capacity, | ) |
| CHRISTOPHER GOODWIN, in his | ) |
| individual capacity, GARY SACCO, in his | ) |
| individual capacity, | ) |
| Defendants. | ) |

**THE DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF
THEIR JOINT MOTION FOR SUMMARY JUDGMENT WITH LEAVE GRANTED TO
FILE WITH EXCESS PAGES ON APRIL 11, 2025 (D.N. 90)**

NOW come the Defendants, STEVIE BROWNING, JEFFREY BERMANI,

CHRISTOPHER GOODWIN, and GARY SACCO, and offer this memorandum of law in

support of their Joint Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 and

L.R. 56.1, D. Mass.

## I.   STATEMENT OF THE CASE

This is a case where the Plaintiff, Jenna Freeman, in her capacity as the guardian of Brian

Corbett ("Brian"), has alleged police misconduct by four members of the Massachusetts State

Police resulted in harm to Brian, a man who has Down syndrome.  The Plaintiff alleges Brian

was harmed when the Defendants, Tpr. Stevie Browning, Tpr. Jeffrey Bermani, Tpr. Christopher

Goodwin, and Tpr. Gary Sacco, provided assistance to him when he was naked on the side of

Route 1 in Danvers, Massachusetts after experiencing an emotional crisis.  In short, Brian was

traveling on Route 1 in Danvers, Massachusetts with his father, Daniel Corbett ("Daniel"), when

he defecated on himself.  Daniel pulled over on the side of the road and attempted to help Brian who became increasingly upset and began to attack him.  Tpr. Stevie Browning happened upon the scene and attempted to calm Brian down and keep him from hitting his father and running into the traffic on heavily traveled Route 1.  Over the course of the incident, each of the Defendant troopers arrived to render assistance.  Brian was eventually restrained, placed on a gurney, and transported to a hospital where he was treated for minor scrapes to his knees and released to his parents.

Through a Third Amended Complaint, Plaintiff seeks compensation from the Defendants for falsely arresting Brian in violation of his Fourth and Fourteenth Amendment rights (Count I), exposing him to excessive force in violation of his Fourth Amendment rights (Count II), failing to intervene to prevent Brian from being discriminated against based on his disability (Count IV), along with common law claims for emotional distress (Count V) and assault and battery (Count VI) and a state claim alleging Brian was denied his rights as due him under the Massachusetts Equal Rights Act, M. G. L. c. 93, § 103 (Count VII).

The Defendants deny they acted inappropriately at any time or in any way interfered with the rights of Brian Corbett, or caused him any harm.

## II.  STANDARD OF REVIEW ON SUMMARY JUDGMENT

A motion for summary judgment is a vessel launched "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), quoting, Garside v. Osco Drug, 895 F.2d 46, 50 (1st Cir. 1990), (quoting Fed. R. Civ. P. 56 advisory committee's note).  Summary judgment should be granted if the movant shows, based on materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

2

R. Civ. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)).  "Otherwise stated, [the Court's] task is to determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999), quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–2, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Because this case is before the court on the Defendants' motion for summary judgment, all facts must be taken in the light most favorable to the Plaintiff, the non-moving party, Fed. R. Civ. P. 56(c); Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008).  Even with that presumption, the Plaintiff cannot rely upon the allegations contained in her Third Amended Complaint to get beyond a motion for summary judgment.  "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) quoting, Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  To prevent judgment entering in favor of the Defendants, the Plaintiff must present evidence to counter that which the Defendants presents through this motion – evidence that must go beyond a mere recycling of the allegations found in her complaint.  Vargas v. Royal Bank of Canada, 604 F. Supp. 1036, 1045 (D.C. Puerto Rico 1985).  In fact, the nonmoving party must "present affirmative evidence" in order to ward off summary judgment.  Anderson, 477 U.S. at 256–57.  "[T]he evidence offered by the adverse party cannot be 'merely colorable' or speculative." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (internal citations omitted).

When considering arguments for summary judgment, a court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation," Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997).  Material included in or attached to a summary judgment motion must be admissible in order for it to create a dispute of a genuine material fact sufficient to thwart summary judgment, Osco Drug, Inc., 895 F.2d. at 49–50 ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment").  To be genuine, a factual dispute must be built on a solid foundation — a foundation constructed from materials of evidentiary quality. Nieves-Romero, 715 F.3d at 378, quoting, Tropigas de Puerto Rico, Inc., 637 F.3d at 56; Osco Drug, Inc., 895 F.2d at 48. "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative" will not suffice to ward off a properly supported summary judgment motion. Nieves-Romero, 715 F.3d at 378, quoting, Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

While it is not the role of the court to make credibility determinations or weigh the evidence presented, Anderson, 477 U.S. at 255, the uncontradicted testimony of the Defendants is appropriately considered in assessing this motion for summary judgment.  See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 271–72 (3rd Cir. 2007) ("We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion…The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness").  In short, "evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment, " Asociación De Periodistas De P.R. v. Mueller, 680 F.3d 70, 72 (1st Cir. 2012), quoting, Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (Emphasis in the original).

4

### III.  STATEMENT OF THE FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 Defendants Browning, Bermani, Goodwin, and Sacco have filed a joint, concise statement of undisputed material facts ("MF") in support of their joint motion for summary judgment.  The Defendants incorporate by reference the MF as set forth therein and adopt the MFs as submitted for the purposes of this motion for summary judgment only and reserves the right to object to the MFs and to offer evidence contrary to those MFs should this matter proceed to trial.  Fed. R. Civ. P. 56(c)(1)(A). Throughout this memorandum of law the Defendants will cite to the MFs as **(MF ¶ )**.

### IV.  LAW AND ARGUMENTS

Through their motion and this supporting memorandum, the Defendants seek to have judgment enter in their favor because "there is no genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Green Mountain Realty Corp., 750 F.3d at 38 (internal citations omitted).  In addition, the Defendants are entitled to qualified immunity.  The qualified immunity defense is a question for the court to decide. Lewis  v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991), citing Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987).

Additionally, although the Court upon dismissing the Plaintiff's federal claims "may decline to exercise supplemental jurisdiction" over the remaining state law claims, 28 U.S.C. § 1367(c)(3), the interests of fairness, judicial economy, convenience, and comity are best served here by a consideration of Plaintiff's state law claims since those issues have been fully briefed. Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015) (citing Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

a. **COUNT I:  Since Brian Corbett was Not Arrested, There was No Violation of his Constitutional Rights.**

Brian Corbett was never arrested.  Rather, acting pursuant to the community caretaking doctrine, the troopers restrained Brian for his own safety and that of others **(MF ¶¶ 27, 29, 36, 37, 43–46, 77-84; Defendants' Exhibit 8 ¶¶ 19, 20, 22)**.  Such a restraint did not violate Brian's Fourth Amendment rights and was only made necessary because of the exigent circumstances created when Brian repeatedly assaulted his father and attempted to run into traffic on Route 1, a heavily trafficked, high-speed highway, thereby creating a hazard that had to be dealt with immediately **(MF ¶¶ 12, 18, 27, 29, 36, 37, 43–46)**.

The community caretaking doctrine recognizes that law enforcement officers, such as these Defendants, perform a multitude of community functions, many of which do not involve the investigation of crimes.  Specifically, the Defendants are "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety." United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006), quoting United States v. Rodriguez–Morales, 929 F.2d 780, 784–85 (1st Cir.1991).  Recognized community caretaking functions include combating actual hazards, preventing potential hazards from materializing, alleviating dangerous roadside conditions, and responding to emergencies requiring the officer's attention.  See United States v. Gemma, 818 F.3d 23, 31 (1st Cir. 2016); Lockhart-Bembery v. Sauro, 498 F.3d 68, 71–72 (1st Cir. 2007); United States v. Harris, 747 F.3d 1013, 1017 (8th Cir. 2014).  Here, the conduct of the Defendants – restraining and handcuffing a violent, out-of-control man to prevent him from running into a highspeed highway – falls squarely within what is permitted under the doctrine which provides that "police action can be constitutional *notwithstanding* the fact that it

6

constitutes a seizure." Lockhart-Bembery, 498 F.3d at 75 (emphasis in original) **(MF ¶¶ 26, 29, 39, 41–47; Defendants' Exhibit 8 ¶¶ 19–22)**.

Law enforcement officers acting pursuant to the doctrine are given "a great deal of flexibility in how they carry out their community caretaking function" and the "ultimate inquiry is whether, under the circumstances, the officer[s] acted 'within the realm of reason,' " taking into account "the various facts of the case at hand." Lockhart-Bembery, 498 F.3d at 75 (quoting Rodriguez-Morales, 929 F.2d at 786), also Lockhart-Bembery, 498 F.3d at 71–72, 75–76 (holding that the temporary seizure of a motorist for the purpose of alleviating dangerous roadside conditions could be a reasonable exercise of the community caretaking function) **(MF ¶¶ 41–47)**.  Some thirty-five years ago, the United States Supreme Court unanimously recognized that "[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties." Brigham City v. Stuart, 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).  In reviewing the conduct of law enforcement officers who are faced with such emergencies, courts utilize a "standard of reasonableness [that] is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present." Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994) and see Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  In sync with this standard is the conduct of the Defendants who worked to restrain Brian to keep him safe and to prevent him from running into traffic on Route 1.  The efforts of the law enforcement Defendants constituted a reasonable response to the emergency that Brian created. **(MF ¶¶ 12, 18, 27, 29, 36, 37–46, 77-84; Defendants' Exhibit 7 ¶¶ 9–22)**

It is anticipated that the Plaintiff will argue the Defendants are not entitled to the protections of the doctrine because they did not wait for the arrival of Brian's mother before

making a decision as to how to best respond to Brian's misconduct and the dangerous situation he created **(MF ¶¶ 37–46; Defendants' Exhibit 7 ¶¶ 9–22; Defendants' Exhibit 8 ¶¶ 10–22)**. Accepting as true that the troopers did not await Mrs. Corbett's arrival before acting to keep Brian safe, the doctrine still applies as law enforcement officers are entitled to select from any number of reasonable choices to address the emergency they are confronted with. Id. Simply put, there is "no requirement that officers must select the least intrusive means of fulfilling community caretaking responsibilities." Lockhart-Bembery, 498 F.3d at 76. Here, the Defendants were required to act quickly solely due to the danger created by Brian; however, in doing so, Tpr. Bermani and Tpr. Goodwin acted with appropriate restraint when they guided a naked and out-of-control Brian from the vehicle and eventually to the ground to handcuff him to prevent him from walking into traffic on a highspeed highway **(MF ¶¶ 40–46; Defendants' Exhibit 8 ¶¶ 18–22)**. Trp. Sacco observed Brian violently banging his legs against the blacktop and held his ankles to prevent him from further injuring himself or others. **(MF ¶ 82-85)**. The conduct of the officers, which prevented Brian from running into the traffic on Route 1, is properly viewed as "well within the realm of reason." Id. Importantly, the Fourth Amendment does not require officers to stand idly by as a public safety risk unfolds before them. Caniglia v. Strom, 593 U.S. 194, 207, 141 S. Ct. 1596, 1604, 209 L. Ed. 2d 604 (2021) **(MF ¶¶ 12, 18, 27, 29, 36, 37, 39–45, 64; Defendants' Exhibit 7 ¶¶ 9–11)**. Restraining an out-of-control individual to prevent him from running into traffic on a high-speed highway need not be given even a generous review to be found to have met the "standard of reasonableness" that the community caretaking doctrine allows for. Inhabitants of City of Lewiston, 42 F.3d at 695.

The reasonableness of the Defendants' conduct is made clear by the facts which establish that they encountered a very distraught person who was posing a danger to himself and to those

8

around him by repeatedly trying to run into traffic on Route 1 **(MF ¶¶ 12, 15, 18, 20, 25, 27–29, 35, 36, 39–45)**.  The response of the Defendant troopers, who used minimal force, establish that Brian was handled professionally and respectfully **(MF ¶¶ 27, 30, 31, 35, 36, 38–48, 82-85; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 17–23)**.  The Defendants' conduct of taking hold of Brian's arms and guiding him to the ground and handcuffing him to prevent him from running into the traffic on Route 1 is well within the realm of reason.  When their conduct is viewed in the context of the community caretaking doctrine which allows police officers to act to prevent harm from occurring, it meets the standard. Id. and Lockhart-Bembery, 498 F.3d at 76.

The use of force that was exercised here is also reviewed with the understanding that the person being subjected to the force was a disabled person.  **(MF ¶¶ 3, 4, 30, 31, 35, 36, 44, 82-85; Defendants' Exhibit 8 ¶ 6)**.  Gray v. Cummings, 917 F.3d 1, 11 (1st Cir. 2019) ("the level of force that is constitutionally permissible in dealing with a mentally ill person differs both in degree and in kind from the use of force that would be justified against a person who has committed a crime or who poses a threat to the community") (internal quotations and citation omitted).  Even through the lens of this review, the minimal force used by the Defendants was both reasonable and made necessary by Brian's misconduct (See Graham analysis at p. 10).

Also of no help to the Plaintiff is the fact that Tpr. Browning's attention was first drawn to Brian and Daniel Corbett when he saw what he thought was a disturbance on the side of the road **(MF ¶¶ 24–26)**.  Once the situation was explained to the Defendants by Daniel Corbett, the Defendants all acted in conformance with the doctrine **(MF ¶¶ 27–30, 35, 36)**.  That is because "the possible existence of mixed motives will not defeat the officer's ... entitlement to the exception." Matalon, 806 F.3d at 635; Castagna v. Jean, 955 F.3d 211, 222 (2020).

Because the community caretaking doctrine authorizes the conduct engaged in by the Defendants, Plaintiff's effort through Count I to seek compensation from these Defendants for violations of Brian's Fourth and Fourteenth Amendment rights must be dismissed as the Defendants' conduct did not violate a constitutional right of Brian Corbett.  Rather, the Defendants' conduct in preventing Brian from running into traffic on Route 1 ensured the safety of Brian and all others on the scene **(MF ¶¶ 12, 18–20, 22, 24, 27–31, 35, 36, 42–48; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 9–22)**.

> **b.**  **<u>COUNT II:  Due to Brian's Conduct, the Defendants' Use of Force Was Reasonable and Necessary</u>.**

At no time did the Defendants use force that could be deemed to have been excessive **(MF ¶¶ 47, 48; Defendants' Exhibit 10)**.  Although the Defendants found it necessary to put their hands on Brian, and ultimately to handcuff him, the use of force under the circumstances presented was the minimum amount needed to quell the disturbance that Brian created **(MF ¶¶ 43–46, 82-85)**.  The degree of force that is appropriate in any given situation is a judgment call, which, as here, must be made in the context of a rapidly evolving critical situation.  <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 397 (1989).

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer[s] employed force that was unreasonable under the circumstances." <u>Conlon</u> v. <u>City of Newton</u>, Civil Action 23-10026-FDS (D. Mass. Jun. 21, 2024), quoting <u>Jennings</u> v. <u>Jones</u>, 499 F.3d 2, 11 (1st Cir. 2007) (citing <u>Graham</u>, 490 U.S. at 397).  When Tpr. Bermani and Tpr. Goodwin each took hold of Brian and guided him to the ground and handcuffed Brian to subdue him and to protect Brian from himself, their conduct was reasonable when viewed in the context of the rapidly evolving critical situation that Brian created.  <u>Gray</u>, 917 F.3d at 11 **(MF ¶¶ 35–48; Defendants' Exhibit 7 ¶¶ 9–11; Defendants'**

**Exhibit 8 ¶¶ 9–22)**. Further, Trp. Sacco while standing on the passenger-side the vehicle observed Brian go headfirst through the driver's side window so went around the vehicle to driver's side and observed Brian banging his legs against the blacktop so he takes action to hold Brian's ankles to prevent him from injuring himself. **(MF ¶80-85)**. The actions of the troopers are reasonable given the circumstances and are in no way excessive.

To prevail on Count II, Plaintiff must show (1) that there was a "seizure" within the meaning of the Fourth Amendment, and that (2) the use of force during the seizure was unreasonable. Graham, 490 U.S. at 395. Plaintiff fails on both points for the reasons argued above. First, the seizure was constitutional in that it was undertaken due to the exigent circumstances that Brian himself created. Lockhart-Bembery, 498 F.3d at 75. Under the community caretaking doctrine, the Defendants had right to act as they did in seizing Brian. Second, the record is unchallenged that the Defendants used only the minimal amount of force that was necessary to restrain Brian for his own safety, Graham, 490 U.S. at 397 **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 79-84; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 9–22)**.

The reasonableness of the force used by the Defendants is properly viewed from the perspective of a reasonable officer on the scene who was confronted with the need to resort to the use of force. Id. at 396. The objective reasonableness of the force used to restrain Brian must be determined by utilizing a balancing test. That test considers, among other things, the severity of the situation the officers were presented with, whether or not Brian posed an immediate threat to the safety of the officers or others, and whether he was actively resisting the efforts of law enforcement to put an end to the dangerous scene that Brian created when he repeatedly tried to run into traffic on Route 1. Id. **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–**

**48, 64)**. Even though there was not an arrest, the Defendants still had the right to use such force as was necessary to restrain a violent and out-of-control Brian. Gaudreault v. Municipality of Salem, 923 F.2d 203, 205 (1st Cir. 1990). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–397.  The Graham factors all favor the Defendants as Brian's conduct in assaulting his father, jumping into the driver's seat of a motor vehicle, throwing items from the vehicle, and attempting to run into traffic was a "tense, uncertain, and rapidly evolving" event the required immediate action by law enforcement because it posed a significant and immediate threat to the safety of Brian, his father, the motoring public, and to the Defendants. Id.  **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 64; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 9–22).**

Since the Defendant officers had the right to seize Brian under the community caretaking doctrine they also were authorized to use such force as was necessary to seize him.  The injuries complained of by the Plaintiff are de minimus (Defendants' Exhibit 10) and are in keeping with the amount of force used to restrain Brian for his own protection.  See, Dean v. City of Worcester, 924 F.2d 364, 368–369 (1st Cir. 1991), citing Graham; and see also, Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (extent of injuries proper consideration in assessing if excessive force was used in pre-trial detainee setting).  **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 64, 79-84; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 9–22).**

Because Brian was not subjected to excessive force, summary judgment should enter in favor of each of the Defendants on Count II.

c. **COUNT IV[1]:  As Brian Was Not Discriminated Against, There Was No Need to Intervene.**

Plaintiff seeks compensation from Troopers Bermani, Goodwin, and Sacco based on their failure to stop Tpr. Browning from discriminating against Brian based on his disability.  While most typically raised in the context of an excessive force claim, a law enforcement officer can be found liable for failing to intervene to stop the violation of a Plaintiff's rights when "[1] he or she was present when [the right was being violated]; [2] observed the [violation of the right]; [3] was in a position where he or she could realistically prevent [the violation of the right]; and [4] had sufficient time to do so." Davis v. Rennie, 264 F.3d 86, 102 (1st Cir. 2001) (discussing failure to intervene claim in the excessive force context).

In short, the Plaintiff's allegation is that Tpr. Browning denied Brian his rights because of his disability and that Tprs. Bermani, Goodwin, and Sacco failed to intervene to put a stop to the discrimination.  The record on summary judgment clearly establishes that Tpr. Browning was informed of Brian's disability by Daniel Corbett **(MF ¶ 30)**.  Once he was aware of Brian's disability, he communicated that to the other Defendants **(MF ¶ 31)**.  Each and every act taken by Tpr. Browning was done to ensure Brian's safety **(MF ¶ 30)**.  Tprs. Bermani, Goodwin, and Sacco did intervene; however, their intervention was with Brian in an effort to control him and to quell a dangerous disturbance that he created **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 64, 81–85)**.  To be clear, the Troopers acted as they did because of Brian's misconduct and his inability to control himself and not because of his disability.  De Boise v. Taser Intern., Inc., 760 F.3d 892, 899 (8th Cir. 2014).  (See argument at Section IV f. below).

---

[1] Count III was dismissed by the Court on February 13, 2024 (D.N. 73).

Missing from Plaintiff's complaint is the conduct that Tpr. Browning engaged in that amounted to discrimination against Brian based on his disability.  The Plaintiff has further failed to set forth what it was that the Defendants could have or should have done to stop Tpr. Browning.  To prevail on a claim brought under § 1983, a plaintiff must "identify the specific constitutional right allegedly infringed," Albright v. Oliver, 510 U.S. at 271, citing Graham, 490 U.S. at 394.  In addition to identifying the specific right infringed upon, the burden is on a plaintiff to "show that the defendants' conduct was the cause in fact of the alleged deprivation" Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).

Summary judgment is appropriate for the Defendants on Count IV because the Plaintiff neither identifies the right allegedly infringed nor identifies how it was infringed.  The Defendants have put forth specific facts of evidentiary quality detailing how they acted in response to Brian's conduct and why **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 64, 79-84; Defendants' Exhibit 7 ¶¶ 9–11; Defendants' Exhibit 8 ¶¶ 9–22)**.  The Defendants' facts are unchallenged by the Plaintiff.  It is well established that "evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment, " Asociación De Periodistas De P.R. v. Mueller, 680 F.3d 70, 72 (1st Cir. 2012), quoting, Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (Emphasis in the original). In order to defeat this motion, the Plaintiff must "present affirmative evidence" to the contrary.  Anderson, 477 U.S. at 256–57.  "[T]he evidence offered by the adverse party cannot be 'merely colorable' or speculative." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (internal citations omitted).  Plaintiff has no evidence to counter that the conduct of the Defendants was made necessary by the conduct of Brian and that it was at all times reasonable **(MF ¶¶ 15, 19, 20, 22, 27, 29, 30, 34–37, 39–48, 64, 79-84)**.  When considering arguments for

14

summary judgment, a court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation," Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997) (Emphasis supplied).  Unfortunately for the Plaintiff, the Plaintiff's version of events as set forth in the Third Amended Complaint must be disregarded as it fails to meet the standard under Fed. R. Civ. P. 56 which establishes that a party opposing summary judgment cannot defeat the motion merely by standing on the bare allegations of the complaint.  That is especially true where the allegations are wholly contradicted by affidavits, as they are here. Emery v. Merrimack Valley Wood Prods., Inc., 701 F.2d 985, 991 (1st Cir. 1983)(internal citations omitted).  The Defendants' account of the encounter on the side of Route 1 is appropriately credited as being unrefuted because the Plaintiff has no facts of evidentiary value to counter it. Gray, 917 F.3d at 6.

As is developed fully above, upon their arrival at the scene of the incident, the troopers were met with a "tense, uncertain, and rapidly evolving" event the required immediate action by law enforcement.  Graham, 490 U.S. at 396–397.  Because Brian's rights were not interfered with through any action of any of the Defendants, summary judgment should enter in their favor on Count IV.

### d. COUNT V:  Brian Was Not Subjected to the Intentional Infliction of Emotional Distress.

The Plaintiff alleges harm under a theory that the Defendants' conduct amounted to the intentional infliction of emotional distress on Brian Corbett.  In order to prevail on this claim, the Plaintiff must demonstrate "(1) that the [Defendants] intended to cause, or should have known that [their] conduct would cause, emotional distress; (2) that [the Defendants'] conduct was extreme and outrageous; (3) that [the Defendants'] conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." Bertram v. Viglas, Civil No. 19-11298-LTS, 2020 WL

1892187, at *25 (D. Mass. April 16, 2020) citing, Howcroft v. City of Peabody, 747 N.E.2d 729, 747 (Mass. App. Ct. 2001) (quoting Cady v. Marcella, 729 N.E.2d 1125, 1131 (Mass. App. Ct. 2000) (internal quotations and citation omitted)). "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." Id.

The conduct complained of by the Plaintiff is limited to the Defendants guiding Brian out of his father's vehicle to a standing position and then escorting him face down on the ground and placing him in handcuffs only after he continued to resist the efforts of law enforcement **(MF ¶¶ 35–48, 79-84; Defendants' Exhibit 8 ¶¶ 9–22)**. This conduct does not meet the standard of outrageous conduct. Moreover, since the Defendants acted under the community caretaking doctrine, and in their official capacity as law enforcement officers, their conduct is privileged. See, Lockhart-Bembery, 498 F.3d at 68 and Commonwealth v. Asher, 471 Mass. 580, 588 (2015) (the police privilege permits police officers to use reasonable and necessary force when carrying out their official duties).

Plaintiff's claim for IIED fail on the merits as a matter of law because "[u]nder Massachusetts law, a plaintiff must show he suffered 'severe' emotional distress as one of the four elements of an IIED claim." Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010). Here, the Plaintiff has failed to provide any evidence to prove that the emotional distress Brian suffered, if any, was "severe." To establish the severe distress, the Plaintiff must show that he suffered the "kind of distress 'that no reasonable man could be expected to endure.' " Id. (quoting Agis v. Howard Johnson Co., 371 Mass. 140 (1976)). A plaintiff cannot rest on mere "emotional responses including anger, sadness, anxiety, and distress" to prove the severity prong of IIED. Quinn v. Walsh, 49 Mass. App. Ct. 696 (2000) (abrogated on other grounds).

16

Moreover, "[n]either singly nor in combination does the evidence here meet [the high] standard" to create a genuine issue for trial as to whether any of the law enforcement officer Defendants intended to cause emotional distress when they undertook to safeguard Brian from the most certain harm he would have suffered if he had been able to run into the traffic on Route 1.  Kinan v. City of Brockton, 876 F.2d 1029, 1037 (1st Cir. 1989) **(MF ¶ 30; Defendants' Exhibit 8 ¶¶ 9–22)**.

The First Circuit held that, as a matter of law, a Plaintiff's claim for IIED fails for want of satisfying the "severe" prong of the emotional distress claim when the complained of symptoms amount to no more than being "afraid of police sirens," and "sometimes [having] nightmares that produced sweating and a racing pulse." Town of Billerica, 617 F.3d at 531.  Here, Plaintiff is unable to put forward any admissible evidence as to what emotional distress, if any, Brian suffered.

Based on the foregoing, summary judgment should enter for the Defendants on Count V because when the Defendants acted as they did to quell the disturbance created by Brian their conduct was neither extreme nor outrageous and was well in conformance with what a reasonable police officer would engage in given the circumstances created by Brian.  Bertram v. Viglas, Civil No. 19-11298-LTS, 2020 WL 1892187, at *25 (D. Mass. April 16, 2020) (internal citations omitted).

e. **COUNT VI:  The Defendants' Conduct Was Privileged; Therefore, There Was No Assault and Battery.**

The Defendants were acting under a privilege when they restrained Brian as they did.  As developed above (See argument at Section IV, a., b.) the use of force that was used to restrain Brian was both justified and minimal **(MF ¶¶ 43–48; Defendants' Exhibit 8 ¶¶ 9–22)**.  As such, under the police privilege, they cannot be held liable for any harm that Plaintiff might

allege Brian suffered.  See Commonwealth v. Asher, 471 Mass. at 588 (the police privilege permits police officers to use reasonable and necessary force when carrying out their official duties).  Since the conduct of the Defendants was privileged under both the police privilege and the community caretaking doctrine, there can be no claim for an assault and battery.  Id. and Lockhart-Bembery, 498 F.3d at 75; Brigham City, 547 U.S. 398.

  **f.** **COUNT VI:  The Plaintiff Has Failed to Establish a Claim under MERA.**

  Plaintiff's effort to utilize M. G. L. c. 93, § 103, the Massachusetts Equal Rights Act ("MERA") to obtain compensation from these Defendants misses the mark.  As a stepping off point, the Defendants did not investigate nor arrest Brian Corbett (D.N. 1 at 73, 74).  Rather, acting pursuant to the community caretaking doctrine, they intervened to protect Brian from causing harm to himself or others.  United States v. Coccia, 446 F.3d at 238.  Defendants, for the purposes of this motion, agree that their conduct in dealing with Brian was informed by their knowledge that he was disabled; however, the Defendants' conduct in no way amounted to a deprivation of Brian's rights because he was disabled.  Rather, the conduct of the Defendants was made necessary because of Brian's repeated effort to harm his father and to run into traffic on Route 1 **(MF ¶¶ 14, 15, 17–20, 22, 25, 27, 29, 35–37, 39, 41–43, 79-84)**.  The actions taken by the Defendant officers was made necessary by Brian's objectively verifiable misconduct and not because of his disability.  De Boise v. Taser Intern., Inc., 760 F.3d at 899.  The use of force imposed upon Brian was minimal and in keeping with Gray, 917 F.3d at 11.

  The MERA closely mirrors the Americans With Disabilities Act in that the MERA is the enforcement mechanism for rights granted pursuant to Article CXIV of the Massachusetts

constitution.[2]  Other circuits[3] have had cause to address § 1983 claims that are based on

allegations of violations of the ADA.  In those circuits, the courts have made clear that police

officers responding to an individual in a crisis, such as Brian was, will not be burdened with

having to engage in an interactive process to determine what "reasonable accommodation" might

work best.  Rather, in applying the ADA to law enforcement actions, the courts do

> "not second guess [an officer's] judgments, where...an officer is presented with
> exigent or unexpected circumstances." Bahl v. County of Ramsey, 695 F.3d 778,
> 784–85 (8th Cir.2012); see also Tucker v. Tennessee, 539 F.3d 526, 536 (6th
> Cir.2009) ("[W]e rely on and expect law enforcement officers to respond
> fluidly to changing situations and individuals they encounter. Imposing a stringent
> requirement under the ADA is inconsistent with that expectation, and impedes
> their ability to perform their duties."); Hainze v. Richards, 207 F.3d 795, 801 (5th
> Cir.2000) ("Title II does not apply to an officer's on- the-street responses to
> reported disturbances or other similar incidents, whether or not those calls involve
> subjects with mental disabilities, prior to the officer's securing the scene and
> ensuring that there is no threat to human life.")."

De Boise v. Taser Intern., Inc., 760 F.3d at 899.

The term "reasonable accommodation" as set forth in the MERA suggests an interactive

process that is not compatible with the situation that Brian created on the side of Route 1.  In

cases addressing law enforcement's response to citizens with a disability, the focus is on

securing the scene and making sure everyone is safe.  Id.  That is exactly what the Defendants

---

[2] 42 U.S. Code § 12132 - Discrimination
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by
reason of such disability, be excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be subjected to discrimination by any such
entity. (Pub. L. 101–336, title II, § 202, July 26, 1990, 104 Stat. 337.)  Cf. M.G.L.A. Const.
Amend. Art. 114 Art. CXIV. Handicapped persons; discrimination
Art. CXIV. No otherwise qualified handicapped individual shall, solely by reason of his
handicap, be excluded from the participation in, denied the benefits of, or be subject to
discrimination under any program or activity within the commonwealth.
[3] The First Circuit declined to address this issue when it decided Gray v. Cummings, 917
F.3d 1, 17–18 (1st Cir. 2019).

did here when they took hold of Brian, guided him from the vehicle, and escorted him to the ground **(MF ¶¶ 27–30, 40–48, 64; Defendants' Exhibit 8 ¶¶ 19–22)**.

g. <u>**Since Brian Did Not Suffer a Deprivation of a Clearly-Established Right, the Defendants Are Entitled to Qualified Immunity**</u>.

The principle of qualified immunity shields a police officer from liability for civil damages under § 1983 when his conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  <u>Noun</u> v. <u>City of Lowell</u>, 768 F.Supp. 323 (D.Mass. 2011).  It is the duty of a Plaintiff pursuing claims through § 1983 "to identify the specific constitutional right allegedly infringed," <u>Albright</u> v. <u>Oliver</u>, 510 U.S. 266, 271 (1994), citing <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 394 (1984).  Here, the Plaintiff seeks damages for what she alleges are violations of Brian's rights as conferred through the Fourth and Fourteenth Amendments.  In addition to being required to establish the specific right which was infringed, the burden is on the Plaintiff to "show that the defendants' conduct was the cause in fact of the alleged deprivation" <u>Rodriguez-Cirilo</u> v. <u>Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).

To assess the applicability of qualified immunity to a given case the First Circuit has adopted a two-part test that was articulated by the Supreme Court in <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223 (2009).  <u>See</u> <u>Maldonado</u> v. <u>Fontanes</u>, 568 F.3d 263, 269 (1st Cir. 2009).  Under this two-part test the court first looks to see if the plaintiff has alleged sufficient facts to make out a constitutional violation.  The inquiry then turns to establish whether the right was clearly established at the time of the alleged misconduct by the defendants.  <u>Id</u>.  Under a qualified immunity analysis, a Plaintiff does not establish a right to recover damages upon a showing of a constitutional harm.  A Plaintiff must also show that it was a particular Defendant's actions that caused Brian to suffer a deprivation of a constitutional right. <u>Harlow</u> 457 U.S. at 800.  See

20

<u>Mlodzinski</u> v. <u>Lewis</u>, 648 F.3d 24, 33 (1st Cir. 2011) ("whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right").

Accepting that Brian was seized by the Defendants, the Fourth Amendment was not violated because the seizure was privileged.  <u>Lockhart-Bembery</u>, 498 F.3d at 75 ("[P]olice action can be constitutional *notwithstanding* the fact that it constitutes a seizure.")(Emphasis in original).  Qualified immunity is, therefore, proper because the Plaintiff cannot establish a deprivation of a right.  <u>Briscoe</u> v. <u>LaHue</u>, 460 U.S. 325, 334-336 (1983).

Simply put, when the Defendants undertook to provide assistance to Brian Corbett on the side of Route 1 in Danvers, Massachusetts they were acting under the community caretaking doctrine.  The conduct of the Defendants, neither individually nor collectively, did not violate a clearly established constitutional or federally protected right of Brian.  <u>Id</u>.  On January 12, 2021, it could not be stated that it was beyond "reasonable debate" that a law enforcement officer undertaking to subdue and handcuff a violent, out-of-control man with Down syndrome to prevent him from running into traffic on a high-speed highway was acting in violation of a clearly established right **(Defendants' Exhibit 7 ¶ 10; Defendants' Exhibit 8 ¶¶ 9, 10, 12, 15, 16, 18–22)**.  <u>Ashcroft</u> v. <u>al-Kidd</u>, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

The Defendants, through this motion and supporting material, forcefully establish that the Plaintiff has failed to show a deprivation of a civil right that is attributable to an action of the Defendants and, therefore, the Defendants are entitled to qualified immunity and are entitled to have judgment enter in their favor, <u>Harlow</u> 457 U.S. 800; <u>Coca-Cola Co</u>., 522 F.3d at 175.

### V.  <u>CONCLUSION AND REQUESTED RELIEF</u>

Based on the foregoing, the Defendants, Tpr. Stevie Browning, Tpr. Jeffrey Bermani, Tpr. Christopher Goodwin, and Tpr. Gary Sacco, respectfully request that their motion for

summary judgment be granted, and that the Plaintiff's Third Amended Complaint be dismissed, with prejudice, costs, and attorneys' fees.

Respectfully submitted,

TROOPER JEFFREY BERMANI,                   TROOPER STEVIE BROWNING,
By his attorneys,                          By his attorneys,

ROGAL & DONNELLAN, P.C.                     LAW OFFICE OF DANIEL J. MOYNIHAN, P.C.

/s/ Joseph G. Donnellan                    /s/ Daniel J. Moynihan
Joseph G. Donnellan, BBO# 558060           Daniel J. Moynihan, BBO# 546346
100 River Ridge Drive, Suite 203           Mark A. Russell, BBO# 568943
Norwood, Massachusetts 02062               271 Main Street, Suite 302
(781) 255-1200                             Stoneham, Massachusetts 02180
jdonnellan@rogalanddonnellan.com           (781) 438-8800
                                           moynihanlaw@verizon.net
                                           attyrussell.moynihanlaw@gmail.com

**CHRISTOPHER GOODWIN**                     DEFENDANT GARY SACCO,
By his Attorney,                           By his attorney,

/s/Timothy J. Duggan                        /s/ Michael J. Akerson
Timothy J. Duggan (BBO #545966)            Michael J. Akerson, Esq.
Duggan & Gianacoplos, LLC                  BBO# 558565
89 Access Road, Unit A                     Reardon, Joyce & Akerson, P.C
Norwood, MA 02062                          4 Lancaster Terrace
T: (781) 762-0077                          Worcester, MA 01609
E: tjd@dcclawyers.com                      508.754.7285
                                           akerson@rja-law.com

Dated: April 15, 2025

## CERTIFICATE OF SERVICE

I, Joseph G. Donnellan, hereby certify that I served a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to all counsel of record, via ECF, and to those not so registered via 1st Class U.S. Mail, postage prepaid this 15th day of April, 2025.

/s/ Joseph G. Donnellan
Joseph G. Donnellan

22